APPLERA CORPORATION and Roche Molecular Systems, Inc., plaintiffs,

v.

MJ RESEARCH INC. and Michael and John Finney

No. 3:98CV1201 (JBA).

United States District Court, D. Connecticut.

Jan. 20, 2004.

Asim Varma, David Gersch, Michael J. Klyce, Jr., Arnold & Porter, Washington, DC, James Sicilian, Jennifer K. Lawson, Mario R. Borelli, Day, Berry & Howard, Hartford, CT, Jennifer Gordon, Orrick, Herrington & Sutcliffe, New York, NY, James T. Shearin, Pullman & Comley, Bridgeport, CT, for Plaintiffs.

Albert L. Jacobs, Jr., Gerard F. Diebner, Joseph M. Manak, Greenberg Traurig, Daniel A. Ladow, Graham & James, John E. Beerbower, Cravath, Swaine & Moore, New York, NY, C. Allen Foster, Kevin E. Stern, Greenberg Traurig, LLP, Washington, DC, Donna Nelson Heller, Harold Bolton Finn, III, Patrick J. McHugh, Finn, Dixon & Herling, Stamford, CT, Joseph B. Darby, III, Greenberg & Traurig, Boston, MA, for Defendants.

Daniel A. Ladow, Graham & James, New York, NY, Patrick J. McHugh, Finn, Dixon & Herling, Stamford, CT, for Counter Claimant.

James T. Shearin, Pullman & Comley, Bridgeport, CT, for Counter Defendant.

**Ruling on Defendants' and Counterclaim Plaintiffs' Motion for Partial Reconsideration or, in the Alternative, Clarification of *Markman* Ruling [Doc. # 719]**

ARTERTON, District Judge.

Defendants move for reconsideration of that portion of the Court's Claim Construction [Doc. # 715] holding that none of claims 17, 33, and 45 of U.S. Patent 5,333,675 (the " '675 Patent") require the use of link data fields, *see* Claim Construction [Doc. # 715] at 9–15, on three grounds:

(i) the Court erred as a matter of law in holding that the prosecution history is not considered in construing claims;

(ii) the Court erred as a matter of law in holding that the '675 patent's prosecution history did not "unambiguously" require asserted claims 17, 33, and 45 to employ a "link data field" to link to a new step after the completion of a cycle . . .; and

(iii) the Court misconstrued the '675 patent file history because Applera did argue that all of the asserted claims of the '675 patent were patentable over the Techne reference because of the use of link data fields after a cycle[,] . . . the Court's present construction of the asserted claims renders [them] unpatentable over Techne[, and] the Court's present construction . . . improperly reads certain claim language out of these claims.

Defs. Mot. for Recons./Clarification [Doc. # 719] at 1–2. In the alternative, defendants move the Court to clarify whether its construction of claims 17, 33, and 45 of the '675 Patent "requir[es] the subset of

sequenced checkpoints or steps all to be cycled within one 'profile' or 'file' and, if so, whether the profile or file only contains the subset of sequenced checkpoints." *Id.* at 2. Familiarity with the Court's Claim Construction [Doc. # 715] is assumed, each of defendants' arguments is addressed in turn, and, for the reasons set forth below, defendants' motion [Doc. # 719] is DENIED in all respects.

## I. Standard

 While "[d]istrict courts may engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves," *Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1361 (Fed.Cir.2002), and the law of the case doctrine "gives a district court discretion to revisit earlier rulings in the same case," *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand*, 322 F.3d 147, 167 (2d Cir.2003), reconsideration is "subject to the caveat that 'where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" *Id.* (*quoting Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir.1964) (Friendly, J.)). "Thus, those decisions may not usually be changed unless there is 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice.'" *Id.* (*quoting Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.1992)). Defendants contend the Court committed clear error by construing claims 17, 33, and 45 of the '675 Patent not to require a link data field as corresponding structure. *See* Defs. Reply [Doc. # 742] at 1. The Court disagrees.

## II. The Role of Prosecution History

 Defendants' assertion that the Court held that the prosecution history is not considered in construing claims is without support in the Claim Construction [Doc. # 715]. To the contrary, the Court not only held that prosecution history should be considered in construing claims, it included such consideration in construing the disputed claims of the '675 Patent. *See* Claim Construction [Doc. # 715] at 10–11 & nn. 6–7, 14–15 & n.9. Defendants' objection thus appears to challenge the Court's conclusion that the doctrine labeled prosecution history estoppel, elaborated in *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997) and *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002), is not applicable to claims construction. Defendants advance no arguments not previously asserted in the *Markman* hearing. Notwithstanding defendants' renewed arguments, the Court views *AccuScan, Inc. v. Xerox Corp.*, 76 Fed.Appx. 290, 291, 2003 WL 22148905, at *1 (Fed.Cir. Sept.17, 2003) as an accurate summary of the proper role of prosecution history at the claims construction stage, *see e.g. Invitrogen Corp. v. Biocrest Mfg., L.P.*, 327 F.3d 1364, 1367 (Fed.Cir.2003); *Ballard Medical Products v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1358–59 (Fed.Cir.2001); *Southwall Tech., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1578 (Fed. Cir.1995). In that *Warner* and *Festo* do not generally speak to claims construction but rather instruct on the role of prosecution history where a patentee asserts a claim for infringement under the doctrine of equivalents, they do not modify or alter that role in another context.

## III. Burden on Patentee

 Similarly, defendants assert that the statement "... the re-examination prosecution history of claim 17 does not

unambiguously distinguish prior art on the basis of a link data field," Claims Construction [Doc. # 715] at 15, demonstrates legal error because, contrary to the teachings of *Warner–Jenkinson,* 520 U.S. 17, 117 S.Ct. 1040, *Festo Corp.,* 535 U.S. 722, 122 S.Ct. 1831, and *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 344 F.3d 1359 (Fed.Cir.2003) (en banc), it reveals the Court placed the burden on defendants to explain the prosecution history and correspondingly construed ambiguities therein against defendants and not Applera. Defendants also vigorously maintained this burden of proof argument at the *Markman* hearing, utilizing blowup poster boards with citations to *Warner* and *Festo,* 535 U.S. 722, 122 S.Ct. 1831. The Court rejected defendants' arguments and applied the Federal Circuit's long standing doctrine regarding the role of prosecution history in claims construction, *see e.g., Texas Digital Systems, Inc. v. Telegenix, Inc.,* 308 F.3d 1193, 1204 (Fed.Cir.2002) (Prosecution history rebuts presumption that claim carries its ordinary meaning where "the inventor has disavowed or disclaimed scope of coverage, by using words or expressions of manifest exclusion or restriction, representing clear disavowal of claim scope."). *See* Claim Construction [Doc. # 715] at 10–11 & nn. 6–7, 14–15 & n.9.

## IV. Misconstruing the '675 Patent's File History

### A. Summary of the Court's Prior Holdings

As the Court previously concluded, *see* Claims Construction [Doc. # 715] at 15 & n.9, while admittedly a close question, the coupling of the fact of amendments to/cancellations of claims 11, 33, 40, and 44, *see* Defs. *Markman* App. Vol. 3 [Doc. # 645] Ex. 38 at 1–2, 4–5, with general and unspecified language that amended and cancelled claims were patentable based on the deficiency of the Techne TP–16, *see id.* at 13, does not demonstrate the "clear disavowal of claim scope," *see Texas Digital,* 308 F.3d at 1204, required by the Federal Circuit before claims 17, 33, and 45 of the '675 Patent may be properly limited by statements in the underlying prosecution history about Techne TP–16's deficiency. The underlying references to the prosecution history, which defendants cited and the Court considered, either comment on the history of claims that contained explicit linking functions and are not asserted in the present litigation, *see* Claim Construction [Doc. # 715] at 11, or did not expressly relinquish claim scope such that the asserted claims of the '675 Patent should be construed to include a link data field as corresponding structure, *see id.* at 14–15.

Further, as the Court already alternatively held, *see id.* at 15 n. 9, even defendants' reading of the re-examination prosecution history would not require a construction of claims 17, 33, and 45 of the '675 Patent to include a link data field as corresponding structure because, where the prosecution history (of claims containing explicit linking means/functions and not asserted in the present litigation) distinguished Techne TP–16, it did not do so on the basis that the Techne TP–16 lacked the ability to link multiple temperature profile programs but rather on the grounds that the Techne TP–16 was incapable of allowing "the user ... to specify that any particular [temperature profile program] in the sequence of linked programs be run more than once." Applera *Markman* App. [Doc. # 678] Ex. 22 at 11. Thus, such deficiency made

> [t]he Techne TP–16 ... quite tedious to use .... [T]he researcher would have to laboriously enter each temperature and time for each step in the pre-PCR soak ..., each step of each of the 30 repeti-

tions of the PCR protocol itself and then enter the temperatures and time for the post-PCR subambient soak. This would require the user of the Techne machine to dedicate one or two segments of a first program to the pre-PCR ramp and soak, and then manually enter each up ramp, and extension soak and so on for 30 repetitions of the PCR cycle. This would be followed by manual entry of the post-PCR subambient soak. If the user then decided after this experiment that he or she needed more or fewer PCR cycles, the entire manual entry process of all ramps and soak temperature would have to be entered again simply to change the number of PCR cycles. This is a terribly tedious, time-consuming and irritating task for researchers that have better things to do with their time. Accordingly, the invention of claim 1 [which explicitly included linking means] is a substantial improvement over the prior art."

*Id.* at 10–11. Thus, the improvement claimed in the prosecution history of the '675 Patent was the capacity to execute the sequence A → B • B • B → C (where A, B, and C are different temperature

programs, "→" represents a link, and "•" represents a cycle) in contrast to Techne TP–16's inefficient ability to replicate such sequence only by manually entering every temperature program whether or not one program was identical to the previous program—a sequence of A → B → X → Y → C (where X and Y are identical to B). *See* Defs. *Markman* App. Vol. 1 [Doc. # 642] Ex. 20 at 3–4. The Techne TP–16's deficiency was further considered to be compounded by the fact that "the TP–16 device is limited to 8 programs" and thus a "sequence with twenty repetitions could not be performed with the TP–16 device," *id.* at 4, a severe limitation given that "[t]ypically a user will program a PCR cycle of temperatures and will want to repeat this cycle 30 or so times," *id.* Ex. 16 at 2, and "twenty or more [is] not [an] uncommon requirement," *id.* Ex. 20 at 3.[1]

### B. Defendants' Arguments

The above summary of the Court's holdings disposes of most of defendants' arguments offered in support of its assertion that the Court misconstrued the '675 patent file history. *See* Mem. in Supp. of Mot. for Partial Recons. [Doc. # 720] at

---

1. The contrary viewpoint expressed in Mr. Fish's "Petition to Withdraw from Issue," Defs. *Markman* App. Vol. 1 [Doc. # 642] Ex. 16—that "once the TP–16 leaves a particular program in a sequence, it cannot later go back to that program and perform it again even once" and thus A → B • B • B → C "would be a permissible TP–16 sequence, but A → B • B • B → C → B → D would not be ... because the TP–16 would get caught in an endless loop between B and C at the termination of program C," *id.* at 4–5—was subsequently rejected by the patentee in favor of Mr. Fish's original explanation (with the caveat that the patentee could not determine whether the Techne TP–16 could perform the sequence A → B → C → B → D without being caught in the infinite loop B → C → B → C), *see id.* Ex. 19 at 26–27, Ex. 20 at 3–5. Against this background, the re-examination prosecution history states, "[w]hereas the

Techne controller ... could not repeat a cycle a selected number of times before going on to another cycle (it would be trapped in an endless loop), the Omron ...." Defs. *Markman* App. Vol. 3 [Doc. # 645] Ex. 38 at 12. This statement conflates both of the patentee's prior and distinct explanations regarding improvement over the prior art, the text invoking Techne TP–16's alleged inability to perform the sequence A → B • B • B → C and the explanatory parenthetical referencing Mr. Fish's alternate and subsequently, not-relied-upon endless loop distinction. The confusion is perhaps attributable to the re-examination prosecution history's focus on distinguishing claims away from the Omron controller of European Patent Application '408, which "was not seen to have [the deficiency of Techne TP–16]," *id.* at 12, and thus rendered continued careful discussion of Techne TP–16 "irrelevant," *id.* at 13 n. 1.

8-17.[2] The Court turns to defendants' other arguments.

Defendants assert that the Court's statements "the function does not include linking to a separate program after cycling a subset of sequenced checkpoints, that is, linking to multiple temperature profiles," Claims Construction [Doc. # 715] at 9, and "[t]he claims do not refer to the later step of linking to different temperature profiles," *id.* at 14, do not adequately respond to defendants' position on construction because they "never contended . . . that the linked file had to be another temperature profile [versus] one or more non-cycled temperature steps, such as a sub-ambient temperature soak." Mem. in Supp. of Mot. for Partial Recons. [Doc. # 720] at 14. The gist of this argument seems to be that the claims could require a link data field as corresponding structure notwithstanding that they do not require linking to another temperature profile. While the Court agrees that the link data field disclosed in the specification can link to a sub-ambient soak, the point of the Claims Construction is that

> The qualifying subordinate clauses that further define "subset"—"where said subset is less than the total number of checkpoints which will be accessed in

sequence" and "which can be repeated a user-defined number of times before the checkpoint following the last checkpoint in the subset of sequenced checkpoints is accessed"—**do not recite a linking or any other additional function.** They describe what occurs after the subset of checkpoints, a PCR cycle, has run (whether or not such cycle is repeated a user defined number of times): namely, the first checkpoint of a new temperature profile is accessed. While the claim requires the user controllable means to produce at least one subset of sequenced checkpoints, it is not further required to access another checkpoint following that subset.

Claims Construction [Doc. # 715] at 10 (emphasis added); *See also id.* at 12–13. That is, the claims do not require the user controllable means to perform any linking or accessing function, but rather to produce at least one subset of sequenced checkpoints defining temperatures and times for a selected cycle of PCR.

■ Defendants' argument regarding the Court's invocation of the doctrine of claim differentiation, *see* Mem. in Supp. of Mot. for Partial Recons. [Doc. # 720] at 15–16; Claims Construction [Doc. # 715] at 9–10, warrants little comment. The

---

2. The re-examination prosecution history's conflation of Mr. Fish's distinguishing arguments, *see supra* note 1, appears to have misled defendants. *See e.g.* Mem. in Supp. of Mot. for Partial Recons. [Doc. # 720] at 9 ("The Techne device would be trapped in an infinite loop if it tried to repeat a cycle a select number of times *before going to another step or another cycle.*") (emphasis in original). The prosecution history summarized above demonstrates that the endless loop problem, if present at all (and ultimately the patentee's expert was not sure, *see supra* note 1), was thought to be triggered where the Techne TP–16 attempted to return to a temperature profile program after leaving it for another and not where the Techne TP–16 merely linked to another program, which may or may not have

contained the identical temperature profile as the preceding program. Techne TP–16's ability to repeat the identical temperature profile eight times (via repetitive manual entry and linking) was simply not thought to equate to the capacity to run thirty or more temperature profiles without linking and by having to make only one entry. In sum, the deficiency in Techne TP–16, at least according to the prosecution history of the '675 Patent, was not considered to "occur[ ] when another step or cycle must be accessed after a cycle is repeated a select number of times," Mem. in Supp. of Mot. for Partial Recons. [Doc. # 720] at 10, but rather to be in the Techne TP–16's inability to repeat a temperature profile more than once before having to link to another temperature profile.

Court is well aware that the doctrine "is a guide, not a rule," Mem. in Supp. of Mot. for Partial Recons. [Doc. # 720] at 15, *see* Claims Construction [Doc. # 715] at 29–30, which is why the doctrine did not form the sole basis for the Court's conclusion that the function of the user controllable means did not include linking but rather "weigh[ed]" in favor or it.

Finally, defendants' contentions regarding reading language out of claim 17 of the '675 Patent, *see* Mem. in Supp. of Mot. for Partial Recons. [Doc. # 720] at 16–17, were all raised and addressed in the Court's original ruling. *See* Claims Construction [Doc. # 715] at 9–10, 11–14.

## V. Motion for Clarification

Defendants request clarification on whether the "subset of sequenced heating, cooling, and/or temperature maintaining steps," Claim Construction [Doc. # 715] at 12, must all occur within one temperature profile, and, if so, whether such temperature profile can only contain the subset of sequenced steps or may also include, for example, an incubation or sub-ambient holding step. Because the Claim Construction does not require the user controllable means to perform the function of linking to or accessing any checkpoint following the production of at least one subset of sequenced checkpoints, the questions MJ poses are not implicated and "clarification" is inapplicable at this time.

## VI. Conclusion

■ For the foregoing reasons, defendants' motion for Partial Reconsideration or, in the Alternative, Clarification of *Markman* Ruling [Doc. # 719] is DENIED in all respects. While the Court understands that the Federal Circuit encourages a rolling claim construction commensurate with the Court's deepening and evolving understanding of the asserted

claims, defendants' reargument of previous positions does not enhance the Court's understanding so as to illustrate the need to alter the construction it has offered to the parties thus far.

IT IS SO ORDERED.